**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

OSSIE ROBERT TRADER,       :
                           :    Civil Action No. 11-0039 (PGS)
            Plaintiff,   :
                           :
            v.             :    **OPINION**
                           :
R.S., Deputy Clerk, et al.,  :
                           :
           Defendants.  :

**APPEARANCES:**

Plaintiff pro se
Ossie Robert Trader
United States Penitentiary
P.O. Box 150160
Atlanta, GA  30315

**SHERIDAN**, District Judge

Plaintiff Ossie Robert Trader, a prisoner currently confined at the United States Pentitentiary, in Atlanta, Georgia, seeks to bring this action in forma pauperis pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), alleging violations of his constitutional rights.

On January 11, 2011, this matter was ordered statistically closed, based on Plaintiff's failure to submit a complete application for leave to proceed in forma pauperis.  Thereafter, Plaintiff corrected the deficiencies and requested to re-open this matter.  Based on his affidavit of indigence and the absence

of three qualifying dismissals within 28 U.S.C. §1915(g),[1] the
Court will grant Plaintiff's applications to re-open this matter
and to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a)
and will order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to
determine whether it should be dismissed as frivolous or
malicious, for failure to state a claim upon which relief may be
granted, or because it seeks monetary relief from a defendant who
is immune from such relief.

## I. BACKGROUND

The following factual allegations are taken from Plaintiff's
Complaint and from court records of which this Court can take
judicial notice.[2]

Plaintiff Ossie Trader was arrested in 1994 on charges of
armed bank robbery, conspiracy, and related crimes. See United
States v. Trader, Criminal No. 94-0534 (E.D.Pa.). Plaintiff
initially entered a plea of not guilty and through counsel, in

---

[1] The Court notes that Plaintiff had at least two "strikes"
under § 1915(g) at the time he submitted this Complaint in
January of 2011. See Carrasquillo v. Upton, Civil No. 09-0817
(E.D. Tex.); Trader v. Meehan, Civil No. 02-3791 (E.D. Pa.).
After this matter was opened, Plaintiff incurred a third strike,
upon completion of the appellate proceedings in Trader v. United
States, Civil No. 10-1881 (D.D.C.).

[2] This Court will take judicial notice of the dockets of
other federal courts in cases related to this Petition. See
Fed.R.Evid. 201; Southern Cross Overseas Agencies, Inc. v. Wah
Kwong Shipping Group Ltd., 181 F.3d 410, 426-27 (3d Cir. 1999).

preparation for trial, filed several motions, including a motion
to dismiss the indictment for violation of his right to a speedy
trial.[3]  See Docket Entries 34, 40, 42.

In June 1995, Plaintiff changed his plea to guilty.  After a
hearing, the District Court accepted the guilty plea and
scheduled a sentencing hearing.  See Docket Entries 47, 48.

Plaintiff alleges that, in January 1998, two and a half
years after he had entered his guilty plea, the District Court
Clerk administratively terminated the pending motions, making an
entry to that effect in the criminal docket.  In its entirety,
the docket entry reads:

> (Court only) * * Terminated motion(s) as to OSSIE R.
> TRADER, CHARMAINE TRADER: MOTION FOR SEVERANCE, MOTION

---

[3] The Sixth Amendment to the U.S. Constitution provides that
"[i]n all criminal prosecutions, the accused shall enjoy the
right to a speedy and public trial ... ."  In addition, Title 18
Section 3161(c)(1) provides:

> (c)(1) In any case in which a plea of not guilty is
> entered, the trial of a defendant charged in an
> information or indictment with the commission of an
> offense shall commence within seventy days from the
> filing date (and making public) of the information or
> indictment, or from the date the defendant has appeared
> before a judicial officer of the court in which such
> charge is pending, whichever date last occurs. If a
> defendant consents in writing to be tried before a
> magistrate judge on a complaint, the trial shall
> commence within seventy days from the date of such
> consent.

(emphasis added.)  This "speedy trial" provision is subject to
various exclusions of time as set forth in subsequent subsections
of Section 3161.

TO DISMISS FOR VIOLATION OF SPEEDY TRIAL RIGHTS, MOTION
TO COMPEL DISCOVERY, MOTION FOR HEARING AND DEFENDANT'S
PRETRIAL DETENTION.  (Guilty Plea) (rs) (entered:
01/14/1998).

On March 24, 2000, the District Court sentenced Plaintiff to

a term of 248 months' imprisonment to be followed by 5 years'

supervised release.  See Docket Entry 82.

Here, Plaintiff alleges that Defendant Deputy Clerk R.S.

conspired with the Defendants United States Attorney for the

Eastern District of Pennsylvania, Assistant U.S. Attorney Seth

Weber, Assistant U.S. Attorney William B. Carr, Jr., Assistant

U.S. Attorney Karen L. Corigsby, and United States District Judge

Michael M. Baylson, to enter onto the criminal docket in United

States v. Trader, Criminal No. 94-0534 (E.D.P.A.), the

purportedly "false" entry.  Plaintiff alleges that the entry is

"false" because there was never any judicial order to terminate

this motion.  The entry was made in 1998, but Plaintiff alleges a

continuing injury, apparently because the entry remains on the

criminal docket.  Plaintiff alleges that all Defendants mentioned

above conspired to falsify and conceal this entry and to deny

Plaintiff his constitutional rights.

Plaintiff alleges that making and ignoring this allegedly

erroneous entry amounts to a (1) a violation of the civil RICO

statute, 18 U.S.C. § 1964, (2) a violation of 18 U.S.C. § 1001,

(3) a violation of 18 U.S.C. §§ 241 and 242, (3) a violation of

18 U.S.C. § 1505, (4) a violation of his right to equal

4

protection under the Fifth Amendment to the U.S. Constitution,
(5) a violation of his right to due process under the Fifth
Amendment to the U.S. Constitution, and (6) a violation of his
rights under the Sixth Amendment to the U.S. Constitution.
Plaintiff also asserts a claim for malicious prosecution against
the United States Attorney for the Eastern District of
Pennsylvania and the named Defendant Assistant United States
Attorneys.  Plaintiff also asserts a claim against United States
Attorney General Eric Holder (1) for failure to properly
supervise and train the United States Attorney for the Eastern
District of Pennsylvania and the named Defendant Assistant United
States Attorneys and (2) under a theory of "respondeat superior"
for the alleged violations of the United States Attorney for the
Eastern District of Pennsylvania and the named Defendant
Assistant United States Attorneys.[4]

---

[4] Plaintiff also asserts jurisdiction under 42 U.S.C.
§ 1983.  A plaintiff may have a cause of action under 42 U.S.C.
§ 1983 for certain violations of his constitutional rights.
Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must
allege, first, the violation of a right secured by the

Plaintiff asks for declaratory relief, injunctive relief in the form of an order to correct the allegedly false docket entry and for all other just and proper relief.,

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

---

Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).  As Plaintiff seeks to proceed, here, solely against federal actors, he cannot state a claim under Section 1983.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A complaint is "malicious" when it contains allegations which the plaintiff knows to be false, it is a part of a longstanding pattern of abusive and repetitious lawsuits, or it contains disrespectful or abusive language. See, e.g., In re Tyler, 839 F.2d 1290, 1293 (8th Cir. 1988); Crisafi v. Holland, 655 F.2d 1305, 1309 (D.C. Cir. 1981); Phillips v. Carey, 638 F.2d 207 (10th Cir. 1981), cert. denied, 450 U.S. 985 (1981). Thus, a complaint is malicious under the referenced statutes if it is repetitive or evidences an intent to vex the defendants or abuse the judicial process by relitigating claims decided in prior cases.

Moreover, it is well established that a court may dismiss a complaint as "malicious" if it seeks to relitigate a previously-litigated claim or if the complaint contains misrepresentations about the plaintiff's other litigation. See, e.g., Nelson v. Paine Webber Corp., Civil No. 09-315, 2010 WL 1028724 (N.D. Fla. March 18, 2010); Hall v. Rahangdale, Civil No. 09-283, 2009 WL 3028219 (N.D. Fla. Sept. 15, 2009); Marshall v. Florida Dept. of

<u>Corrections</u>, Civil No. 08-417, 2009 WL 2351723 (N.D. Fla. July 29, 2009); <u>Williams v. Baxter</u>, Civil No. 08-93, 2008 WL 3049995 (N.D. Fla. July 30, 2008); <u>Starks v. Tanner</u>, Civil No. 06-699, 2006 WL 3210147 (S.D. Ill. 2006); <u>Marshall v. City of Mesquite</u>, Civil No. 03-1508, 2003 WL 21673655 (N.D. Texas 2003)(Report and Recommendation adopted and case dismissed as malicious); <u>Pittman v. Moore</u>, 980 F.2d 994 (5th Cir. 1993) <u>Wilson v. Lynaugh</u>, 878 F.2d 846 (5th Cir.), <u>cert. denied</u>, 493 U.S. 969 (1989).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must plead facts sufficient at least to "suggest" a basis for liability. <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n.12 (3d Cir. 2004). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)
(citations omitted).

The Supreme Court has demonstrated the application of these general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1 [conspiracy] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." ... It makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.

> The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief." A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory. ...

<u>Twombly</u>, 550 U.S. at 556-57 (citations and footnotes omitted).[5]

The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the <u>Twombly</u> pleading standard applies outside the § 1 antitrust context in which it was decided. <u>See</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read <u>Twombly</u> so narrowly as to limit its holding on plausibility to the antitrust context").

> Context matters in notice pleading. Fair notice under Rule 8(a)(2) depends on the type of case -- some complaints will require at least some factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Indeed, taking <u>Twombly</u> and the Court's contemporaneous opinion in <u>Erickson v. Pardus</u>, 127 S.Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8. Put another way, in light of <u>Twombly</u>, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests.

<u>Phillips</u>, 515 F.3d at 232 (citations omitted).

---

[5] It is clear, applying the <u>Twombly</u> standard, that Plaintiff's conclusory allegations of "conspiracy," lacking any factual context, are patently insufficient to establish any agreement among the named defendants to falsify or conceal the challenged docket entry.

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of <u>any</u> civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Id.</u> at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u>

> Therefore, after <u>Iqbal</u>, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. <u>See</u> <u>Phillips</u>, 515 F.3d at 234-35. As the Supreme Court instructed in <u>Iqbal</u>, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.   Bivens v. Six Unknown Agents

In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389 (1971), the Supreme Court held that a violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action against that agent, individually, for damages.  The Supreme Court has also implied damages remedies directly under the Eighth Amendment, see Carlson v. Green, 446 U.S. 14 (1980), and under the equal protection component of the Fifth Amendment's Due Process Clause, see Davis v. Passman, 442 U.S. 228 (1979).  But "the absence of statutory relief for a constitutional violation does not necessarily mean that courts should create a damages remedy against the officer responsible for the violation."

Schreiber v. Mastrogiovanni, 214 F.3d 148, 152 (3d Cir. 2000) (citing Schweiker v. Chilicky, 487 U.S. 412 (1988).

Relying upon Bivens, several lower federal courts have implied a damages cause of action against federal officers, under the Due Process Clause of the Fifth Amendment, for claims by federal pre-trial detainees alleging inadequate medical care or unconstitutional conditions of confinement. See, e.g., Lyons v. U.S. Marshals, 840 F.2d 202 (3d Cir. 1988); Magluta v. Samples, 375 F.3d 1269 (11th Cir. 2004); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert. denied, 446 U.S. 928 (1980).

The Supreme Court has not addressed whether supervisors in Bivens actions may be held liable on a theory of respondeat superior. Most courts to address the issue, however, have held that liability may not be based on respondeat superior. See, e.g., Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000)(collecting cases); Laswell v. Brown, 683 F.2d 261, 268 & n.11 (8th Cir. 1982), cert. denied, 459 U.S. 1210 (1983) (basing its conclusion on the fact that the Supreme Court has looked to 42 U.S.C. § 1983 cases in evaluating the nature of defendant officials' qualified immunity); Kite v. Kelly, 546 F.2d 334, 337-38 (10th Cir. 1976). See also Parker v. U.S., 197 Fed.Appx. 171, 173 n.1 (3d Cir. 2006) (not precedential); Balter v. U.S., 172 Fed.Appx. 401, 403 (3d Cir. 2006) (not precedential). This Court finds persuasive the reasoning of those courts that have

declined to impose _respondeat_ _superior_ liability in _Bivens_
actions.  Accordingly, all claims asserted against Defendant
Attorney General Eric Holder under such a theory shall be
dismissed with prejudice.

IV.  ANALYSIS

Before filing this civil action, Plaintiff had made repeated
attempts in the criminal action and before the Court of Appeals
for the Third Circuit to challenge the administrative termination
of his speedy-trial motion.  _See_, _e.g._, _In re Trader_, No. 11-
1026, 2011 WL 180374 (3d Cir. Jan. 20, 2011); _In re Trader_, 397
Fed.Appx. 785, 2010 WL 3995970 (3d Cir. 2010); _In re Trader_, 352
Fed.Appx. 675, 2009 WL 3792401 (3d Cir. 2009); _In re Trader_, 322
Fed.Appx. 203 (3d Cir. 2009); _In re Trader_, 285 Fed.Appx. 973 (3d
Cir. 2008); _In re Trader_, 226 Fed.Appx. 100 (3d Cir. 2007); _In re
Trader_, 161 Fed.Appx. 205 (3d Cir. 2006).  _See also_, _e.g._, _United
States v. Trader_, Criminal No. 94-0534 (E.D.Pa.) Docket Entries
214 (Order of Court of Appeals in Appeal No. 07-3740 (3d Cir.)
denying request for certificate of appealability to challenge
docket entry), 236 (motion to restore motions administratively
terminated), 237 (order denying motion 236 for lack of
jurisdiction), 247 (motion to restore motions administratively
terminated), 248 (order denying motion 247 for lack of
jurisdiction), 251 (mandate of Court of Appeals, construing
appeal from order 237 as request for certificate of

14

appealability, denied as plaintiff failed to make a substantial showing of the denial of a constitutional right).

The Court of Appeals has repeatedly advised Plaintiff that the administrative termination of his pre-trial motions, after Plaintiff entered his guilty plea, was entirely proper.

> In his mandamus petition, Trader argues that the Clerk of the District Court lacked the power to terminate the motions, absent an express "order, Judgment, or decree" by the District Court. Trader seeks an order directing the Clerk to delete the docket entry, ... .

> Mandamus is a drastic remedy granted only in extraordinary cases. To prevail, a petitioner must establish that he has a "clear and indisputable" right to issuance of the writ, and "no other adequate means" to obtain relief. Trader cannot establish a "clear and indisputable" right to issuance of the writ.

> The management of its docket is committed to the sound discretion of the District Court. We will not interfere with that discretion except upon the clearest showing that the District Court's action substantially prejudiced the litigant. Here, Trader cannot show that he was prejudiced when the Clerk, acting for the District Court, made a docket entry administratively terminating Trader's motions.

> "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Trader waived his speedy trial claim by entering his guilty plea. He also waived his constitutional right to a jury trial; without a trial, Trader's motions for pre-trial discovery and for severance became moot. Thus, because he waived the right to pursue the relief he sought by his motions, Trader suffered no prejudice when the Clerk of the District Court made a docket entry administratively terminating them.

322 Fed.Appx. at *1 (citations omitted).

Most recently, the Court of Appeals admonished Plaintiff that "[i]f Trader continues to file frivolous pleadings or appeals, he will face sanctions." 2011 WL 180374, *1.

Plaintiff's back-door attempt to assert, in a civil rights complaint, the same claim that he has lost at least nine times in proceedings connected with his criminal matter, is frivolous and malicious, and the Complaint shall be dismissed with prejudie on that ground.

Moreover, <u>none</u> of the facts alleged supports <u>any</u> of the specific alleged violations of constitutional or statutory provisions.

A.    <u>Immunities</u>

With very limited exceptions, the Federal Employees Liability Reform and Tort Compensation Act ("Liability Reform Act"), 28 U.S.C. § 2679, immunizes federal employees from liability if they commit negligent or wrongful acts or omissions while acting within the scope of their office or employment. This general rule that federal officers are not liable for conduct arising within the scope of their employment "does not extend or apply to a civil action against an employee of the Government--(A) which is brought for a violation of the Constitution of the United States, or (B) which is brought for a violation of a statute of the United States under which such

action against an individual is otherwise authorized." 28 U.S.C. § 2679(b)(2). This immunity applies even where federal law does not otherwise provide a remedy against the United States. See U.S. v. Smith, 499 U.S. 160, 166 (1991).

Thus, for most such claims, the exclusive remedy is an action against the United States,[6] itself, under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq., which represents a limited waiver of the sovereign immunity of the United States. 28 U.S.C. § 2679(b)(1).[7] The Federal Tort Claims Act gives a district court exclusive jurisdiction over civil actions:

> [1] against the United States, [2] for money damages,
> ... [3] for injury or loss of property, ... [4] caused
> by the negligent or wrongful act or omission of any
> employee of the Government [5] while acting within the
> scope of his office or employment, [6] under

---

[6] Upon certification by the Attorney General that an employee was acting within the scope of employment, the United States is substituted as a defendant. 28 U.S.C. § 2679(d)(1).

[7] The United States has sovereign immunity except where it consents to be sued. United States v. Mitchell, 463 U.S. 206, 212 (1983). In the absence of such a waiver of immunity, a plaintiff cannot proceed in an action for damages against the United States or an agency of the federal government for alleged deprivation of a constitutional right, see FDIC v. Meyer, 510 U.S. 471, 484-87 (1994), or against government employees in their official capacities, see Kentucky v. Graham, 473 U.S. 159, 166 (1985) (a suit against a government officer in his or her official capacity is a suit against the government). Plaintiff can proceed against the United States only to the extent he can state an FTCA claim. In addition, Plaintiff has not alleged, and this Court has not located, any such waiver by the United States District Court for the Eastern District of Pennsylvania. Thus, all claims against the United States District Court for the Eastern District of Pennsylvania will be dismissed with prejudice.

> circumstances where the United States, if a private
> person, would be liable to the claimant in accordance
> with the law of the place where the act or omission
> occurred.

Deutsch v. United States, 67 F.3d 1080, 1091 (3d Cir. 1995)

(quoting 28 U.S.C. § 1346(b)); see also Federal Deposit Ins.

Corp. v. Meyer, 510 U.S. 471, 477 (1994); United States v. Muniz,

374 U.S. 150 (1963).

Taking these provisions into account, Plaintiff can proceed

against the individual federal Defendants here only if (1) one of

the exceptions to individual immunity contained in § 2679(b)(2)

applies or (2) the claim is otherwise valid against the United

States pursuant to the Federal Tort Claims Act.[8]

The exception under § 2679(b)(2)(A) for claims arising

directly under the Constitution relates to claims permitted by

Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).

Those allegations are not sufficient to state a claim and will be

addressed individually, below.

To the extent the Complaint could be construed as attempting

to assert a claim under the Federal Tort Claims Act, it fails to

state a claim.

The FTCA requires the commission of a tort to impose

liability. Goldstar (Panama) S.A. v. United States, 967 F.2d

---

[8] In addition, the various judicial and prosecutorial
defendants are otherwise immune from actions for damages, as
discussed below.

965, 969 (4th Cir. 1992) ("While the FTCA waives sovereign immunity for actions alleging torts by employees of the Government, it does not create novel causes of action. Thus, the mere allegation of a breach of duty under Federal law does not, by itself, state a valid tort claim against the Government.").

The only "tort" alleged by Plaintiff is the allegation that the United States Attorney for the Eastern District of Pennsylvania and the named Assistant United States Attorney "maliciously prosecuted" him. Under Pennsylvania law, the common law tort elements of a malicious prosecution action arising out of a criminal prosecution are: (1) the defendant initiated a criminal proceeding; (2) the proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice. Merkle v. Upper Dublin School District, 211 F.3d 782, 791 (3d Cir. 2000). Here, Plaintiff pleaded guilty to the criminal charges, so he cannot establish that the proceeding ended in his favor. Plaintiff cannot proceed against the various prosecutorial defendants under the FTCA.[9]

---

[9] Also, assuming that an FTCA claim would otherwise be viable, a district court nevertheless lacks jurisdiction over an FTCA claim until the claimant has exhausted administrative remedies. See McNeil v. United States, 508 U.S. 106 (1993); Deutsch v. United States, 67 F.3d 1080, 1091 (3d Cir. 1995).

An action shall not be instituted upon a claim against

1.    <u>Judicial Immunity</u>

Plaintiff also asserts that United States District Judge Michael Baylson and Deputy Clerk R.S. violated his constitutional rights with respect to the challenged docket entry.

As a general rule, judges acting in their judicial capacity are absolutely immune (in both their individual and official capacities) from suit for monetary damages under the doctrine of judicial immunity.  <u>See</u> <u>Mireles v. Waco</u>, 502 U.S. 9, 9 (1991). Judicial immunity can be overcome only for actions not taken in a judicial capacity, <u>id</u>., or for actions taken in a complete absence of all jurisdiction, <u>id</u>. at 11-12.  Allegations that actions were undertaken with an improper motive diminishes neither their character as judicial actions nor the judge's immunity.  <u>See</u> <u>Forrester v. White</u>, 484 U.S. 219, 227 (1988).

---

the United States for money damages ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.  The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a).  Moreover, a claim under the FTCA "shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues."  28 U.S.C. § 2401(b).  As Plaintiff has not exhausted his administrative remedies, and more than two years have passed since his claim accrued, the FTCA claim must be dismissed with prejudice.

Judicial immunity also shields judges from suit for injunctive relief. See Bolin v. Story, 225 F.3d 1234 (11th Cir. 2000) (and cases cited therein); Mullis v. United States Bankruptcy Court, 828 F.2d 1385, 1391-94 (9th Cir. 1987), cert. denied, 486 U.S. 1040 (1988) (adequate remedies are provided through the appeals process and the All Writs Act, 28 U.S.C. § 1651). Cf. 42 U.S.C. § 1983 ("in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable") (abrogating in part Pulliam v. Allen, 466 U.S. 522, 541-42 (1984)). Any actions taken by Judge Baylson with regard to the challenged docket entry clearly were taken in his judicial capacity. Judge Baylson is entitled to judicial immunity in this action.

In addition, judicial immunity may extend to professionals who assist courts in their judicial function. See Hughes v. Long, 242 F.3d 121 (3d Cir. 2001). It long has been the rule that "[c]ourt clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process." Mullis v. United States Bankruptcy Court, 828 F.2d at 1390, cited with approval in Akins v. Deptford Twp, 813 F.Supp. 1098, 1102-03 (D.N.J.), aff'd,

995 F.2d 215 (3d Cir.), <u>cert. denied</u>, 510 U.S. 981 (1993). <u>See also</u> <u>Sindram v. Suda</u>, 986 F.2d 1459 (D.C. Cir. 1993).

In <u>Antoine v. Byers & Anderson, Inc.</u>, 508 U.S. 429 (1993), in which a court reporter sought to assert a claim of absolute judicial immunity, the Supreme Court revisited the question of when judicial or quasi-judicial immunity should be extended to persons who participate in the judicial function.  Faced with a claim of quasi-judicial immunity, a court first must undertake "'a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it.'"  508 U.S. at 432-33 (citations omitted).  In the absence of a common-law tradition involving the relevant official, judicial immunity is extended to officials other than judges "because their judgments are 'functional[ly] comparab[le]' to those of judges--that is, because they, too, 'exercise a discretionary judgment' as a part of their function."  508 U.S. at 436 (citations omitted).  Under this "functional" approach, courts must look to the nature of the function performed and not to the identity of the actor performing it.  <u>See</u> <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 269 (1993).  The Court of Appeals for the Third Circuit has applied this analysis to hold that court-appointed custody evaluators enjoyed absolute judicial immunity from civil rights liability because they acted as "arms of the court," a non-judicial person who fulfills a quasi-judicial role at the

court's request.  See Hughes v. Long, 242 F.3d 121 (3d Cir. 2001).

The question remains whether court clerks are entitled to absolute immunity for conduct such as that charged here, making a docket entry administratively terminating moot motions after entry of a guilty plea in a criminal proceeding.[10]  As several courts have noted in the post-Antoine era, "[a] court's inherent power to control its docket is part of its function of resolving disputes between parties.  This is a function for which judges and their supporting staff are afforded absolute immunity." Rodriguez v. Weprin, 116 F.3d 62, 66 (2d Cir. 1997), cited with approval in Doyle v. Camelot Care Centers, Inc., 305 F.3d 603, 622-23 (7th Cir. 2002) and In re Castillo, 297 F.3d 940, 951 (9th Cir. 2002).

In addition, courts in this Circuit and others continue to extend quasi-judicial immunity to court clerks who are alleged to have acted incorrectly or improperly in the management of a court's docket.  See, e.g., Fischer v. United States, 2003 WL 21262103, *4-*5 (C.D. Cal. 2003) (unpublished) (finding that court clerks were immune from claims that they had obstructed justice and encouraged organized crime by not entering defaults,

---

[10] Immunity analysis is the same whether the suit is brought against state actors pursuant to 42 U.S.C. § 1983 or against federal actors in a Bivens-type action.  Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 433 n.5 (1993).

by entering motions to dismiss as answers, by entering prohibited pre-trial motions, or by altering the sequence of events (numbers and entry dates) while supposedly "'correctly docketing a case'"); Davis v. Philadelphia County, 195 F.Supp.2d 686, 688 (E.D. Pa. 2002); Harris v. Suter, 3 Fed.Appx. 365 (6th Cir. 2001) (unpublished); McGann v. Lange, 1996 WL 586798 (E.D.N.Y. 1996) (unpublished).

The actions challenged here similarly are integral to the judicial function and are within the responsibility assigned to clerks. Thus, Defendant Deputy Clerk R.S. is entitled to absolute immunity in this action.

2. Prosecutorial Immunity

Plaintiff also asserts claims against various prosecuting attorneys for conspiracy to make and conceal the challenged docket entry and for malicious prosecution, as noted above.

"[A] state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit under 42 U.S.C. § 1983. Imbler v. Pachtman, 424 U.S. 409, 410 (1976). Thus, a prosecutor's appearance in court as an advocate in support of an application for a search warrant and the presentation of evidence at such a hearing are protected by absolute immunity. Burns v. Reed, 500 U.S. 478, 492 (1991). Similarly, "acts undertaken by a prosecutor in preparing for the initiation of judicial

24

proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 273 (1993). These principles also govern claims against federal prosecutors. <u>See</u> <u>Schrob v. Catterson</u>, 948 F.2d 1402, 1408-09 (3d Cir. 1991).

Federal prosecutors are entitled to absolute immunity against claims of malicious prosecution. <u>Schrob</u>, 948 F.2d at 1409-11. Similarly, any communication with court staff regarding the status of pending motions would necessarily have been related to the prosecutors' presentation of the government's position with respect to the criminal prosecution.[11] Accordingly, they are entitled to absolute immunity with respect to all claims asserted against them in this Complaint.

B. <u>The RICO Claim</u>

Plaintiff asserts in conclusory fashion that the Defendants violated his rights under the civil RICO statute.

The Civil RICO Act provides a remedy to "[a]ny peson injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). Section 1962 provides, in pertinent part:

---

[11] The Court notes that, in any event, Plaintiff has failed to allege any facts suggesting that the prosecutorial defendants in any way communicated with Deputy Clerk R.S. with respect to the challenged docket entry.

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(b) It shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962.

To make out a claim for relief "a civil RICO claimant must prove (1) a violation of the substantive RICO statute, 18 U.S.C. § 1962, and (2) an injury to the plaintiff's 'business or property by reason of a violation of section 1962.'" Thus, in addition to the element of injury, a civil RICO plaintiff making a claim under subsection (c) must prove:

(1) the existence of an enterprise which affects interstate or foreign commerce;
(2) that the defendant was "employed by" or "associated with" the enterprise;
(3) that the defendant participated in the conduct of the enterprise's affairs; and
(4) that the participation was through a pattern of racketeering activity....

<u>Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local</u> <u>Union 639</u>, 913 F.2d 948, 950 (D.C. Cir. 1990), <u>cert. denied</u>, 501 U.S. 1222 (1991).[12]

The RICO statutes impose liability on persons who finance or conduct affairs of otherwise legitimate enterprises by engaging in certain named "racketeering activity," <u>e.g.</u>, murder, kidnapping, robbery, extortion, bribery, sale of narcotics, gambling, or other indictable offenses.  <u>See</u> 18 U.S.C. §§ 1961 and 1962.

Nothing in the facts alleged regarding the challenged docket entry suggest that any of the named defendants has engaged in a pattern of racketeering activity.  The civil RICO claim will be dismissed with prejudice.

C.   <u>Claims Under Title 18 Criminal Statutes</u>

Plaintiff alleges claims under 18 U.S.C. § 241 (Criminal Conspiracy against federal civil rights) and 18 U.S.C. § 242 (Criminal Conspiracy for deprivation of rights under color of law).  He also alleges claims under 18 U.S.C. § 1001 (Fraud and False Statements) and 18 U.S.C. § 1505 (Obstruction of Justice).

None of these criminal provisions give rise to a private right of action.  Moreover, authorities are in agreement that the submission by a private party of a complaint under such a

_____

[12] Here, Plaintiff asserts that the United States District Court for the Eastern District of Pennsylvania is an "enterprise" within the meaning of the RICO statute.

criminal statute is not the appropriate manner in which to
initiate criminal proceedings.

> A private person may not prosecute a federal
> criminal complaint.  Prosecution of a federal crime is
> the prerogative of the United States through the
> attorney general and his delegates, the United States
> attorneys.  28 U.S.C. § 516 ("Except as otherwise
> authorized by law, the conduct of litigation in which
> the United States, an agency, or officer thereof is a
> party, or is interested, and securing evidence
> therefor, is reserved to officers of the Department of
> Justice, under the direction of the Attorney
> General."); The Confiscation Cases, 74 U.S. 454, 457
> (1868) ("Public prosecutions, until they come before
> the court to which they are returnable, are within the
> exclusive direction of the district attorney, [...]");
> ...; United States ex rel. Savage v. Arnold, 403
> F.Supp. 172, 174 (E.D. Pa. 1975); United States v.
> Panza, 381 F.Supp. 1133, 1133-35 (W.D. Pa. 1974)
> (reciting history of rule); ... .

Peters v. Beard, 2006 WL 2174707 (M.D. Pa. June 13, 2006) (Report

and Recommendation) (citations omitted), adopted by, 2006 WL

2175173 (M.D. Pa. Aug. 1, 2006).  See also Higgins v. Neal, 52

F.3d 337, 1995 WL 216920 (10th Cir. 1995) (unpubl.) (collecting

cases); Caracter v. Avshalumov, 2006 WL 3231465 (D.N.J. Nov. 8,

2006) (collecting cases); Stoll v. Martin, 2006 WL 2024387 (N.D.

Fla. July 17, 2006) (collecting cases).

Nevertheless, if a purported criminal complaint warrants

action, a court may refer it to the United States Attorney for

action.  Savage, 403 F.Supp. at 174.  The commencement of a

criminal action is governed in part by Federal Rules of Criminal

Procedure 3 and 4, which provide some guidance in determining

whether a purported criminal complaint merits reference to the

United States Attorney.  Rule 3 provides, "The complaint is a written statement of the essential facts constituting the offense charged.  It must be made under oath before a magistrate judge or, if none is reasonably available, before a state or local judicial officer."  Rule 4 provides, in pertinent part, "If the complaint or one or more affidavits filed with the complaint establish probable cause to believe that an offense has been committed and that the defendant committed it, the judge must issue an arrest warrant to an officer authorized to execute it."

Here, Plaintiff's allegations are not sufficient to establish probable cause to believe that the defendants violated any of the referenced federal criminal statutes.  This Court perceives no reason, on the basis of the facts before it, to refer this matter to the United States Attorney.

Accordingly, all of these federal statutory claims will be dismissed with prejudice.

D.    <u>Fifth and Sixth Amendment Claims</u>

Plaintiff alleges that the Defendants violated his rights to equal protection and due process under the Fifth Amendment to the U.S. Constitution.  Plaintiff also alleges that the Defendants violated his rights under the Sixth Amendment, which this Court construes as a claim that the Defendants violated Plaintiff's right to a speedy trial.

As noted by the Court of Appeals, when Plaintiff pleaded guilty, he waived his claim to a speedy trial, as well as the other claims asserted in his pre-trial motions; he suffered no deprivation of due process or other injury from the administrative termination of the pre-trial motions.  Nothing in the facts alleged, moreover, suggests that the decision to make the docket entry was made as the result of unlawful discrimination.  Accordingly, these claims will be dismissed with prejudice.

E.    The Failure to Supervise Claim

Plaintiff asserts a claim against United States Attorney General Eric Holder for failure to supervise the United States Attorney for the Eastern District of Pennsylvania and the named Defendant Assistant United States Attorneys.

Where a need for "more or different training ... is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train ... can fairly be said to represent official policy," City of Canton v. Harris, 489 U.S. 378, 390 (1989), and that failure to train "actually causes injury," a supervisor may be held liable, Id.  Here, however, Plaintiff fails to state a claim for a constitutional injury; thus, he fails to state a claim for failure to train.

In addition, in resolving the issue of supervisory liability,

> the focus must be on adequacy of the training program
> in relation to the tasks the particular officers must
> perform. That a particular officer may be
> unsatisfactorily trained will not alone suffice to
> fasten liability on the [supervisor], for the officer's
> shortcomings may have resulted from factors other than
> a faulty training program. ... Neither will it
> suffice to prove that an injury or accident could have
> been avoided if an officer had had better or more
> training ... . Moreover, for liability to attach ...
> the identified deficiency in a city's training program
> must be closely related to the ultimate injury.

Id. at 390-91. Plaintiff alleges nothing more than that a

particular docket clerk made a docket entry with which he

disagrees, plainly an insufficient allegation upon which to base

liability for failure to train. Accordingly, Plaintiff's failure

to train claim must be dismissed for failure to state a claim.

### V. CONCLUSION

For the reasons set forth above, the Complaint will be

dismissed with prejudice, pursuant to 28 U.S.C.

§§ 1915(e)(2)(B)(ii) and 1915A(b)(1), as frivolous and malicious

and for failure to state a claim. It does not appear that

Plaintiff could cure the defects by amendment. An appropriate

order follows.


*s/ Peter G. Sheridan*
Peter G. Sheridan
United States District Judge
District of New Jersey

Sitting by Designation

Dated: April 29, 2011

31